We'll hear argument first this morning, Case 17-1094, Nutraceutical Corporation v. Lambert. Mr. Houston. Mr. Chief Justice, and may it please the Court, in the proceedings below, Respondent filed his Rule 23-F petition months late and Nutraceutical timely objected. Although this Court has held that mandatory claim processing rules are unalterable when properly invoked, the Ninth Circuit in this case created broad and unprecedented equitable exceptions to excuse Lambert's late filing. Critically, in this case, this Court has twice considered language in a Federal rule that is virtually identical to the Federal rules at issue in this case. And in both those cases, in the Carlisle and the Robinson cases, this Court rejected equitable exceptions, even when faced with facts far more empathetic than those presented here. Ginsburg. I thought that both sides agreed that if the motion for reconsideration is filed within 14 days, within that period, then there is tolling until the motion is decided. Is that so? That is correct, Justice Ginsburg. And isn't that a form of equitable tolling? It is not a form of equitable tolling, Your Honor. Instead, as held by this Court in U.S. v. Dieter, it's based on a traditional and virtually unquestioned practice that is premised upon three main policy points to prevent premature appeals, to develop and strengthen the record, and to respect the authority of the district court. It's important to realize that this doctrine could not open the door to equitable exceptions for claim processing rules, because in the Ibarra, Dieter, and Healy cases, those dealt with a statute, 3731, establishing the deadline in a criminal case, and thus it was a jurisdictional case. So the application of that rule in the context of a criminal case with jurisdictional rules in fact told those jurisdictional deadlines. And so, therefore, pursuant to the Court's holdings in Hamer and elsewhere, that is not an equitable exception. Kagan. Mr. Houston, given the reasons that you just stated for that rule, why is the rule limited to a motion for reconsideration that's filed during the 14-day window? In other words, suppose the motion for reconsideration was filed in a timely manner for such a motion, but after the 14-day period, why wouldn't the same reasons apply? Because, Your Honor, if that reasoning applied, in this instance, for instance, there was actually no deadline for filing of a motion for reconsideration in the Central District of California. But let's assume for purposes of your question we had a 30-day deadline. If that 30-day deadline were imposed in this case, and one could file on the 30th day and begin tolling, that would render the 14-day deliberately small window that the advisory committee drafters created in order to minimize the disruption and delay in the context of class action cases a nullity, because in any instance where you would have a longer deadline for a motion for reconsideration, you could wait out that period and avoid the window that was intentionally created by the drafters. And I would like to direct the Court's attention specifically to the advisory committee notes to the 1998 amendment to Rule 23-F, where they specifically stated the importance of the short window to deliberately keep the time as short as possible. Kagan.  Kagan. Kagan. It just seems as though the exception that you admit, which is the exception for filing a motion for reconsideration within the 14-day period, also effectively renders that 14-day period a nullity, right? Because it stops it in its tracks, and then once the motion for reconsideration has been dealt with, as I understand the agreement between the parties, the clock goes all the way back to the beginning. So given that what you the exception you admit renders the 14-day period a nullity, again, I just wonder why the exact same reasons, practices, traditions don't suggest that, for example, as in as what the example you gave, if the motion for reconsideration is timely filed within 30 days, that as long as you do that, it should have the same effect. Kagan, there is no doubt that if the motion for reconsideration is filed, for instance, on the 14th day, there would then be a longer period of time. But we must presume that the advisory committee considered that. And as I have thought about the timing, the 14 days creates a shorter window at which then is hooked the potentially later motion for reconsideration period. If we apply Lambert's rule and extend that out to 30 days or potentially longer, and in the central district no deadline at all, it truly renders the 14-day period a nullity in that instance. Your Honors, I would like to direct your attention particularly to the Carlisle case. That case involved very similar language in former Criminal Rule 45b. And in that instance, the trial court was faced in a situation where there was a motion for judgment of acquittal and the trial judge found legal innocence. And the judge granted additional time. The petition was filed just one day late. The trial judge found that it was appropriate to grant an extension for just a single day because a grave injustice would occur. And yet, faced with legal innocence and excusable neglect, this Court looked at the language of former Federal Criminal Rule 45b, which has virtually identical language to Appellate Rule 26b, which is applicable in this case. Namely, quote, the Court may not enlarge the Court may not extend the time for the  Breyer, what happens if Hurricane Katrina comes along and no one can reach the courthouse? Your Honor, Hurricane Katrina. So the answer is, Your Honor, the situation in Carlisle was far more grave than Hurricane Katrina. In that instance. Breyer, Hurricane Katrina comes along and all the courthouses are shut. Nobody can get there. Everybody loses their motion. Your Honor, in this instance, when you have, with Rule 26f, the emphatic language without the harsh consequences at issue that you do in Carlisle and others, then if the deadline cannot be abided by within the 14 days, then the opportunity to pursue the petition for permission for interlocutory appeal is lost. Now, that may seem like a harsh consequence. I'm not saying harsh consequences. Ginsburg. Didn't it be wrong just to say in Carlisle that it wasn't utterly exceptionalist? So maybe Hurricane Katrina would fall into that category. Well, Your Honor, the language in the plurality opinion is that it was plain and unambiguous, and there was simply no room in the text for even legal innocence to justify a single day's delay. But your answer to Justice Ginsburg's question, I couldn't hear it, what was it was – but I think it was along the same line. What happens in all these things where that courthouse burns down, lightning strikes, Hurricane Katrina? You see the point. In your opinion, does everybody – and, you know, there are dozens of motions pending, some fall within these, some don't. Anyone with a motion that falls within this language, bad luck, you lose. Is that what it is? Even though it isn't a jurisdictional rule, it's a – is that your position? It is our position within this context of a mandatory claim processing rule in the emphatic language that is present here, more so than even in the Carlisle and Robinson case. This is their – I may be misremembering this, but isn't there a provision that extends the filing period when the courthouse is closed? Your Honor, there is an exception for accessibility of the courthouse that would apply in that situation. Now, that doesn't help you with intervening periods. I gather that would not toll in that sense. But if the due date is a date on which the court is inaccessible or formally closed, that – you get at least that relief. Yes, Your Honor. And the key point here, I believe, is that it is properly within the province of the rule drafters to consider when and in what circumstances the court should have discretion. And here, at both Rule 26b and then to distinguish this as an even stronger example of emphatic language, in Rule 2, in both of those cases, there is a discretion that is a bit of a complication, right? It says that we can extend time or permit an act to be done after the time expires. And then what it – after having given that authority to the court, it then takes away the authority to extend the time to file. It doesn't take away both of those things, and they are disjunctive. So what do we do about that? Your Honor, that very issue was addressed in the Robinson case, and that is, with that other issue, can an act be allowed later? The Robinson case found that to allow an act or a filing later would effectively enlarge or extend the period of time, and so, therefore, that would be prohibited. Sotomayor, Problem with Carlisle and Robinson is that they were well before our explanation of there being a difference between jurisdiction and non-jurisdiction claim processing rules. And we were a little bit loose back then in terms of our textual approach to things. Justice Gorsuch's question, though, is a fair one because it's the practice of the Supreme Court with respect to filing of amicus briefs that we don't grant extensions, but we take late amicus. And so why can't we look at the exact words of 26B and say, no, you can't extend the time, but a court has, as it always has, equitable discretion to take something that's filed late because, assuming that the facts qualify as equitable, and that's open to question, I know, in this case, but assuming, why don't we read the provision as it states? A court can permit an act to be done after that time expires. Justice Sotomayor, let me address there were several parts to your question. Let me try to address each in turn. Undoubtedly, and as this Court has stated repeatedly in recent decisions, that there was a sort of loose use of the term jurisdictional. However, and in fact, that loose use of the word jurisdictional was, in fact, improperly used in the Robinson case, and that has been pointed out. But the Court in more recent decisions, particularly the Kontryk decision and the Robinson case, cites Robinson as still good law, acknowledging, though the term jurisdictional was misused, that, in fact, Robinson stands for, as Eberhard said, observing clear limits of the rules. So going back to the second part of your question, the Robinson case specifically addressed the issue that, well, if the Court has not addressed that second portion of the question, an act that could be allowed, if we allowed a late filing, that would, in fact, eviscerate the first proscription and render, in fact, that portion of Rule 26b a nullity. So what work does that language then do to permit an act to be done after the deadline? Why isn't your interpretation itself render that language a nullity? And, Justice Gorsuch, I've been giving thought to that. I had hoped you might. Thank you. So have I. And, Your Honor, I believe what that may open the door to are other acts that do not effectively enlarge or extend the period of time. So there could be other categories of actions that the Court might consider and allow. Give me an example, though, because 26b is entitled extending time. So I would have thought that it would have had to do something about time. I'm just struggling to come up with an example of what work that language does under your interpretation. Your Honor, it might, for instance, countenance some other related proceeding or action other than an extension of time on the actual motion for petition for permission to appeal that would be filed. That might be an instance where that would apply. But I think the language in 26b as construed by Robinson in this instance would preclude an enlargement of the time to file. But what another act that might be allowed could be an act that relates to another motion that might be filed in the proceeding or something collateral, but not the actual motion itself. If, in fact, we read it to include the motion itself, the Court, and of course the Court can revisit the thinking in Robinson, the Court would be moving right to the facts of Robinson and writing out the prescription on the extension  Sotomayor, The problem is that we really wouldn't. Yes, you're right. We would be revisiting Robinson, but we would be saying that the words of a statute have meaning, and Robinson read out of that permission the equitable considerations that the very statute permitted. Your Honor, this case is actually a stronger case with more emphatic language considered collectively than Robinson and Carlisle, because we not only have the equivalent of Rule 45b in 26b, we also have Appellate Rule 2, where there is, of course, the notion of equity and suspending the rules. And the drafters specifically accepted the application of 262. That's a circle with no out, because 2 refers to 26b, and if we read 26b the way I suggest, that already builds in the equitable exception. But in terms of the purpose of the rule, we have previously said that 26b gives 26f gives the court, the trial court, almost unfettered discretion whether to grant the motion to appeal. And if that's the case, wouldn't the natural reading of this be that the court should have unfettered discretion to decide if a late filing makes it think that the issue is more important than it might otherwise have thought? Ginsburg. It's the discretion of the court of appeals, not the district court. Yes. To give permission to appeal. Justice Sotomayor, to answer your question, the court of appeals has discretion to accept a timely petition, but does not have the discretion to accept an untimely petition because the rulemakers specifically remove that discretion in the language of 26b and 2, and there's one other rule that's applicable, and that is Appellate Rule 5a2, which further reinforces that a petition must be filed within 14 days. And Rule 26b, it says generally the court may grant an extension of time, but there's a category of cases in which it can't, and that is for permission to appeal, the time to appeal or the time to seek permission to appeal. Yes, yes, Justice Ginsburg, but that supports our point. Yes, it does. Because in that instance, we can clearly see the intent of the rulemakers in providing for a broad range of equitable discretion and then withdrawing it in the particular instance of 26b. Breyer. What do you think, and I think it was Justice Ginsburg's concurrence in Carlisle, where she said that the court had recognized one, quote, sharply honed equitable exception. It doesn't have the word equitable, but it means it. To mandatory claim processing rules, the unique circumstances exception. Do you agree with that? I agree that Justice Ginsburg filed a concurring opinion and described the unique circumstances doctrine as indeed a sharply honed exception that covers cases in which the trial judge misled a party who could have and probably would have taken timely action had the trial judge conveyed correct rather than incorrect information. Ginsburg's example was the trial judge, you have until X date to file, and the litigant filed on X date, but in fact the judge was wrong and it should have been an earlier date. That's right. When there is a specific assurance by the trial judge and a mistaken one that the party reasonably relies on to its detriment, factually that simply does not apply here and this Court need not reach the applicability of that circumstances doctrine. Breyer. I mean, if you agree, I take it you agree that there is one sharply honed exception, whatever that might be, called unique circumstances. You know, I can make up weird examples, probably you can too, but is there such an exception? I take it your answer is yes or no. Is it yes or no? Your Honor, there has been an exception. Generally, in several cases, that has been described, the unique circumstances doctrine. However, we have not been presented squarely with the question of whether, when you have mandatory claim processing rules with emphatic language, whether that might preclude even the unique circumstances doctrine. Well, that's what I wonder, because I can see, would you agree or not agree? Holding 1, this is not jurisdictional. Holding 2, it is very limited. Holding 3, there is a unique circumstances exception. Holding 4, this doesn't fall within it. Yes, Your Honor. If I understand holding 2, we are addressing not the facts here, but claim processing rules that would be other than this sort of emphatic. I'm addressing, I'm just saying in general, with claim processing rules, there are equitable exceptions. Yes, Your Honor. At least for unique circumstances. And then, this is not 1, that's what you're arguing. You could argue that, or you could say never. And I'm not sure what you think is correct. Your Honor, I am arguing in this case that the Court need not reach the application of the unique circumstances doctrine, and factually, if we attempt to apply it, it does not apply here. Well, are we slicing the bologna pretty thinly? I mean, what's unique, all right? A judge misinforming a party about the time remaining to appeal sounds pretty terrible. But I can imagine a lot more terrible things than that. Hurricanes, lightning, all of Justice Breyer's wonderful parade of horribles. All right? Why aren't those all unique circumstances, too? Don't you really have to argue that Thompson's wrong and that, in fact, the rules here preclude any equitable tolling and unique circumstances as a species of equitable tolling? Doesn't that have to be your argument? Your Honor, doctrinally, that is our argument, that when you have language, as we do at issue here, emphatic and mandatory, it precludes the reading of all equitable exceptions. Mr. Euston, you can't please everyone here. I'm trying my best, Your Honor. I think you're going to have to choose between nothing, no time, never, and, sure, you can reserve some of the possibility of an equitable exception in circumstances that are different from the ones here. So which is it? Your Honor, again, we don't believe the Court needs to reach the application of the unique circumstances doctrine, and if that's the only one, the one sharply honed exception recognized to apply within the context of claim processing rules, and it factually does not apply, then the decision below must be reversed. But to answer your question, I do believe that the language here is sufficiently emphatic and clear that it does not admit to equitable exceptions. I mean, it's not clear that you face this binary choice. The problem with unique circumstances, the potential problem, is that every lawyer who is in trouble thinks that the circumstances of that lawyer's case are unique, and every judge who wants to get to a particular result can characterize the facts of the case before the judge is unique. But maybe there's such a thing as the catastrophic exception or the apocalyptic exception. So if there's a Martian invasion, there would be an exception for that. But something short of that, you know, like the attorney is sick, wouldn't work. That's right, Your Honor. Well, it's rather hard to what is the answer to what Justice Alito says. We have the answer, as the Chief Justice points out, where the courthouse is closed. But one can think of epidemics or fires in the north, and, you know, that's exactly right. And what do we write about that? What, in your opinion, do we write? Forest fire keeps the lawyer from the courthouse, which is open. What do we write? All right. So in that instance, within the context of this case, Rule 23f, the court, in fact, would not be allowed to admit an equitable exception in that circumstance. That appears harsh, but it is not. And the drafters, I submit, had this in mind. It ruled 23f petition for permission to seek interlocutory appeal. If that cannot proceed, they have their full right of appeal at the end of the case. No catastrophic or harsh consequence ensues. And so that's going to be too late in the real world of how the litigation transpires, though, you would admit. Too late as a practical matter. Well, in the, Justice Kavanaugh, in the context of class action cases, typically and, of course, the rules allow this, you can continue to challenge the class certification or decertification order. So practically, there is no catastrophic lost ability. And having that fully retained appellate right puts the Petitioner in a far better circumstance than the party in Carlisle, who is faced with a plain error review on appeal or a habeas route, one of the most difficult pathways in the law. Ginsburg. Would it be fair to say that your position is not necessarily never, but not more than hardly ever? You repeat the question, Your Honor, more than hardly. I missed the last. Yes. In other words, we can say never, and that's one answer. Another is equitable discretion without any tight boundaries. And another is what, in my opinion, Carlisle referred to as sharply honed, not utterly exceptionist, so it's not never, but hardly ever. That could be the pathway. Obviously, the Court does take. And one sharply honed exception, as Your Honor described in your concurrence, was the hardly ever one exception that the Court was describing here, if it actually does not apply. Picking up on Justice Kagan's question at the beginning, is the exception for a motion for reconsideration that's filed within 14 days, is that equitable, or what is that exception? No, it is not an equitable exception, Your Honor. Well, it's not written in the rules. It is based, according to U.S. v. Dieter, it is not written in the rules, but it is instead based on the rules. If it's not written in the rules, doesn't it have to be characterized as equitable? I'm still not understanding where that comes from, and I'm also not understanding what sense that makes, really, because if you filed a timely motion for reconsideration, you have filed a timely motion for reconsideration. It shouldn't be circumscribed based on some other rule that has nothing to do with motions for reconsideration. What's wrong with that? Thank you. What's wrong with that, Your Honor, is that it departs, and the Court can revisit, the teaching of Healy that to keep the appellate right alive, the motion for reconsideration has to be filed within the applicable time, in this case 14 days. And that has been the rule that has applied here. And motions for reconsideration have not been described as equitable exceptions. And again, the point I made earlier, that they have been applied to delay in the context of the application of jurisdictional rules, shows that they are not regarded by this Court historically as equitable in nature. Mr. Chief Justice, if I could reserve the remaining time for rebuttal. Thank you, counsel. Mr. Herstoff. Mr. Chief Justice, and may it please the Court. For three main reasons, the court of appeals properly decided to consider this appeal on the merits. First, the appeal was timely within the plain language of the Federal rules. Second, the court of appeals properly determined that Rule 23F is subject to equitable tolling. And third, the appeal was properly considered based upon this Court's decisions in Harris, Trucklines, and Thompson. And I'd like to start with timeliness under the Federal rules. Rule 59e provides that a motion to alter or amend a judgment may be filed within 28 days. Ginsburg. Rule 59e deals with final judgments at the end of the case, the final judgment on the merits. It doesn't deal with interlocutory rulings. You can't turn every ruling in the case into a judgment covered by Rule 59. 59 is at the end of the case, the final judgment. I submit that the language of Rule 59e refers to judgments, which are defined as orders from which an appeal lies under the rule. Yes, but those words, an order from which an appeal lies, means an appeal as of right and the one thing I think we can all agree on here is permission to appeal the grant or denial of class action is not an appeal of right. I agree with that. It is a permissive appeal. But once the court of appeals grants permission to appeal, the appeal does lie from that certification on the order. But even if the Court finds that the uncertainty is there, I'm not going to argue that an appeal does not lie to appeals, not just as of right. That's right, Justice Kavanaugh, I do. And in the yellow brief, the Petitioner said that an appeal does not lie because it is not an appeal as of right. But in Black's Law Dictionary, it defines lie as to exist or to reside. And once the 20th. But in the context of 59a, 54a, it is an appeal of right. If you segment out one party and a judgment is finalized to that party or a particular claim, the judgment can be made final as to that claim, even though other claims are pending. I thought that's what 54 deals with. It's a rule that Rule 54b does permit a district court to enter final judgment with respect to certain claims. And for that, that is a final judgment as of right once the district court certifies that for appeal. But even if this were not a Rule 59 motion, though, this appeal still was timely for several reasons. Can I just ask on the Rule 59 question again, suppose a local rule gave you 45 days for a motion for reconsideration, but Rule 59 has the 28-day, what's your position on that? If Rule 59 were determined to apply here, then that would not work, because Rule 59 has a non-extendable 28-day period. If it is not a Rule 59 motion, though, I think in your example there would be a local rule that gives, I think you said 45 days, that would be a timely reconsideration motion. Alito Why would that even be permitted? Why would it be permitted to? Alito Why would that, why would the filing of a motion for reconsideration, which is nowhere mentioned in the rules of civil procedure, toll the time for filing an appeal? Because this Court has long held that a timely reconsideration motion will suspend the time to appeal. And in the Deder, Healy, and Ibarra line of cases, those dealt with the criminal rules where there was no specific provision for reconsideration motions. Alito Well, it might be that filing it within the period allowed under the particular rule at issue here would toll the time to appeal, but I don't see where anything – I'm not sure of the basis for the idea that filing a motion, forget about Rule 23 for the moment, filing a motion for reconsideration, so-called, tolls the time to appeal. As I said, there's no mention of that in the rules of civil procedure. And the rules of appellate procedure set out quite clearly the particular motions that toll the time for filing a notice of appeal, and there is no mention there of a motion for reconsideration. There's a motion that mentions a motion to alter or amend the judgment. I think the – this Court's decision in Ibarra explains this well, and the Court explained that the reason that reconsideration motions toll the time to appeal is to give the district court an opportunity to correct their own alleged errors and to prevent unnecessary burdens from being placed on the court of appeals. I think that's shown here, where you have a record on the class certification. The district court is familiar with the record. The district court here specifically said, only 10 days after the decertification order, that it was going to entertain the reconsideration briefing, and during that time, the court agreed to suspend summary judgment proceedings, other pretrial proceedings, and trial. So this was a considerable pause in the proceedings so that the district court would have a chance to reconsider before the case went up on appeal.  And I think the courts should not be discouraged from reconsidering before it goes up to the court of appeals. Ginsburg-Millette, but there's nothing inconsistent with the 14-day limit for seeking permission to appeal and making a motion to reconsider. I mean, you could do both. It's true, they could do – you could do both, but then you'd have the district court and the court of appeals considering the exact same order at the same time, and this Court has long held that the district courts and the courts of appeals should not be. Ginsburg-Millette, but the court of appeals says, we'll wait, we'll wait on the district court's decision on the motion for reconsideration. The court of appeals would have the discretion to stay their proceedings, just like district courts have discretion to stay their proceedings, but still, you'd have the same on the order that's up at both the court of appeals and at the district's court. And I think it makes more sense to say that when the reconsideration motion is pending at the district's court, there should be no need to file a petition for permission to appeal. Kagan. Kagan. What did you understand the district court to be saying when it set the motion for reconsideration? What was – what was the – what's the – what did it tell you about timing deadlines? Well, the district's court said – And what did you infer from what it said? So I'm not – I infer from that that the district court was indeed going to reconsider this decertification order, and indeed, they suspended – the district court suspended further proceedings. So the case was effectively stayed while this was going on. The district court, though, didn't say anything about a time for appeal. Is that correct? That is true. They did not specifically say that. And why doesn't that matter? I think it doesn't matter in the same – in the same way that in Thompson, there is no mention of anything about an appeal. The district court said that the post-trial motion was filed in ample time, and this court held that that representation meant that the appeal was required to be considered on the merits, even though the post-trial motion was not filed in ample time. I don't think that the fact that the district court did not specifically mention appeal really makes a difference here, especially in Thompson. Well, but in Thompson, we – oh, I'm sorry, please. What did you understand us to be saying when we described these types of provisions as mandatory claims processing rules? I think in general, it is strict. It is, however, subject to forfeiture and waiver, and the Court has held open several times whether it's subject to equitable exceptions and – But in the cases – Well, we were – I'm sorry. In the cases, it said mandatory, Kontrick, Eberhardt, it said, strictly applied, but the party who would benefit from the rule can waive the rule or forfeit it. But – but both cases said if it's properly raised, as it was here, then it applies. That's true, but Kontrick also left open the possibility that these rules could be softened on equitable grounds, I think was the language that was used in Kontrick. And it makes sense in this – I'm sorry. I'm just trying to figure out. I mean, when we did sort of tighten up the use, loose use of the term jurisdiction, we said that these are nonetheless mandatory. And for some of us, at least, that made sense. But if it – if the alternative to a stricter application of the jurisdictional term was that equitable claims are going to be available across the board, I mean, I, for one, would want to reconsider our loosening of the use of jurisdiction, because there ought to be some area, I thought, where the claims – where the claim procedures were mandatory in the sense that Justice Ginsburg has just talked about. So I don't think the claim processing rules are necessarily subject to any equitable exception. It's not necessarily subject to good cause exceptions or excusable neglects like most softer deadlines would be. Equitable tolling is different, though. Equitable tolling has been a part of American jurisprudence since the beginning and even in England prior to that. Well, yes, at a time where jurisdiction meant what we used to think it meant. In other words, yes, there was equitable tolling, but not across the board. And the areas in which it did not apply were much more expansive than they are now today. I think back then when equitable tolling did not apply, that – those were in circumstances from my understanding where the time limit is what the Court today would refer to as jurisdictional. Now, here we have a non-jurisdictional provision. Is the upshot of your argument, though, counsel, that so long as it's a non-jurisdictional rule, equitable tolling must always apply? Congress couldn't authorize a truly mandatory statutory deadline? No, that is not our position. We do not go that far. Okay. So if there is room for what the Chief Justice suggests remains, why isn't this the paradigm case? I mean, how clear could Congress through the Rulemaking Committee have been in multiple places, in multiple ways, making clear through language like must, and expressly excluding times for appeal? I mean, gosh, if this isn't good enough, what is? I think that, as Your Honor referred to with my co-counsel, Rule 26b specifically draws a distinction between extending the time on the one hand and, on the other hand, permitting a late filing. And here, if anything, I think that's a good point. Well, we have Robinson that takes care of that problem, he says. So we have precedent there. So, again, how much clearer could the rules have been but for maybe that one example that precedent plugs that hole? Well, I think the Rules Committee actually was a lot clearer in another example where I think the rule would not be subject to equitable exceptions, and that's an appellate rule 4A4, specifically the 2016 amendment to 4A4. There, the Court changed the rule to make clear that only a timely Rule 50 or Rule 59 motion, and it's not an untimely Rule 50 or Rule 59 motion, would suspend the time to appeal regardless of what the district court said. Breyer. What do you think, as a standard, we should use? That is to say, if it's a jurisdictional rule, I guess that's pretty unwaivable and nothing. If it's a non-jurisdictional rule, then equitable grounds. But certainly Congress can stop that, or the Rules Committee. And the way it stopped it was it said, normally, you can extend the time for good cause. Now, that's quite broad, but there's an exception for our case, which says you can't extend it for good cause. So here we have for good cause, here we have zero, and I thought, perhaps, that Justice Ginsburg proposed a narrow exception that would, in fact, make it not for good cause, but not zero. And that's the unique circumstances sharply honed, which I guess covers Justice Ginsburg's view, but cry out, okay? Now, what about that? I'm not advocating it. I want to know your opinion. I agree completely, Justice Breyer, with what you're saying. It is true that a good cause extension is not permitted for petitions for permission to appeal. Rule 26 does not say anything about equitable tolling. Equitable tolling requires much more than simple good cause. Breyer. If, in fact, we are at sharply honed, special, unique circumstances, how do you win this case? Because what seemed to happen here is it was — I don't know if it was you, but whatever lawyer went in for your side within the 14 days did not even ask the judge to extend the time, at least not in writing. And so it's pretty hard to say you are, from an equitable point of view, in a unique circumstance. Well, I do think that the Thompson rule applies here, because 10 days after the decertification order, the district court held a status conference during which we asked for permission to file a motion for reconsideration in writing. And at that time — Sotomayor, you raised the circuit's rejection of that argument. You raised it below. It explicitly didn't rule on that basis. It held that you had filed the motion after the 14 days. What ground do we have to disagree with the circuit court on that? With the same that you are talking about with the Ninth Circuit saying that unless an exception applies, the petition would be barred? Exactly. So the — when the Ninth Circuit said that, it included within that language a reconsideration motion that's filed within the 14 days. So what the court of appeals said was that the decertification order was made on February 20th. There was no Rule 23f petition filed within that 14-day period, and therefore, unless an exception applies, it would be untimely. So the court was saying even if a motion for reconsideration was filed within the 14-day period, it would be untimely. So they considered that an exception as well. So the unique — we've talked about unique circumstances. Unique is defined as the only one. There have been many hurricanes. There have been many fires. There hasn't been a Martian invasion yet. But what do you think it is? Unique is not unusual, right? So if you're going to create an exception for unique circumstances, it can't mean the situation where judges misadvise litigants about how much time they have. That doesn't happen all the time, but we've certainly seen more than one case of that. So if you're going to say unique circumstances, what exactly does it mean if it doesn't mean what the dictionary says? Well, I think it is a unique circumstance where the district court misadvises the party on how much time they have. I mean, I've seen dozens of cases where that has happened. In some, if it's an equitable tolling situation, it's typical that equitable tolling is appropriate, although not always. So that's not unique. Now, if you're going to say it's an unusual circumstance, then I think you've opened the barn door. If you're going to say it's a circumstance where the judge is the main villain in the missing of the deadline, well, then that's something else, and maybe that's better or worse than unusual. But it just seems to me that if you're using unique, perhaps the Court has used unique as kind of a weagle word that shouldn't have any weagle in it. I think that applying this doctrine is consistent with the Federal rules, though, for instance, Rule 1. And the rules are derived from the old equity rules, so it makes sense that there is some flexibility there when a district court misinforms a litigant about the time that they have to file, especially in the context of a non-jurisdictional rule like we have. Well, then I think you do have to say the exception is when the district court misadvises the litigants, rather than saying unique but not really meaning unique, because then you get in a situation that Justice Alito was talking about. Most lawyers consider their case unique when they run into something like this, and the judges, it gives them a lot more flexibility than perhaps the Rules Committee wanted as well. I agree. I mean, I think this term, unique circumstances doctrine, does refer specifically to the district court misinforming it. Kagan.            Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan.       Kagan. Kagan. Number two is what you said, Justice Alito, of what the court has meant when it's done this, is not the attack from Morris or Hurricane Katrina. My understanding is that it was meant to label a category of cases where the court had misled the party into doing something, into missing some kind of deadline. Is that your understanding? Yes, I agree, Justice Kagan. But I don't see where that is here. Where that is, well, the district court paused the proceedings and specifically said that a reconsideration motion could be filed by March 12th of 2015. Yes, so he said a reconsideration motion could be filed. He was right about that. The reconsideration motion could have been filed. What he didn't say anything about was what that meant for your appeal right. That's true, but I think there is a basic understanding that when a reconsideration motion is pending, a party does not need to seek appellate review on top of that. I mean, that's really what happened in Thompson. The district court did not say anything about an appeal. It simply said that the motion was filed in ample time, and the court held that that was sufficiently misleading such that the appeal was required to be considered on the merits, even though the district court was not. Ginsburg In the context of jurisdictional rules, yes, the court overruled Thompson for jurisdictional deadlines in this Court's decision in Bowles, but left it intact for non-jurisdictional rules. And I think with good reason, because non-jurisdictional rules presumably should be subject to, at least presumptively subject to, equitable considerations such as tolling, such as what the Court has referred to as the unique circumstances doctrine, which I think is a subspecies of tolling or estoppel. Ginsburg I thought mandatory, the Court has said in the contract line of cases, mandatory means inflexible. I mean, it generally is inflexible. I mean, we're not advocating for a good cause standard here. It has to be something more than that. I think that a district court misleading a party is more than simple excusable neglect or good cause. Equitable tolling is as well. I mean, in this Court's decision in Irwin, the Court said that statutes of limitations are presumptively entitled to equitable tolling, and then went on to hold that in the facts of that case, equitable tolling was not established because the party had established at most a garden-variety claim of excusable neglect. So I think tolling is on a different level. Breyer I think you have two possible lines of response to Justice Ginsburg's question. I'm curious which you'd choose. So if Thompson doesn't apply to jurisdictional statutes, one could say it does apply to mandatory but inflexible claims processing rules because it's not a species of equitable tolling at all. It is, in fact, a rule of judicial administration that when it's our fault, shame on us. Or one could say, yeah, let's be honest, it's a form of equitable tolling, and therefore shouldn't apply, just as it doesn't to jurisdictional rules, it shouldn't apply to mandatory claims processing rules, but should remain a viable option otherwise. And that would harmonize Bowles with this line of cases. Which of those choices should we make and why? Mr. Shah I do think that these rules presumably should be subject to equitable tolling and not necessarily just for the district court misleading the parties. However, either way, the judgment should be affirmed because here, in fact, the court did mislead Mr. Lambert into thinking that he had a Ginsburg However, the court didn't say one word about permission to appeal. Shah The court didn't, but I think this is just like Thompson, where the court said you had this amount of time to seek reconsideration. Roberts Don't the local rules of many courts then also mislead counsel? Because the local rules of many courts would have motions for reconsideration that could be filed within periods longer than 14 days. Shah Well, then, I think that Roberts Under your position, all the district court did here was identify a date that was longer than 14 days, the local rule for motion for reconsideration. The local rules of many courts similarly identify a date that's longer than 14 days for motions for reconsideration. Shah Well, then Roberts How would you distinguish what happened here from a local rule that's longer than 14 days? Shah I think here the district court did set this specific deadline, and I think it does Roberts How would you distinguish a local rule that has a date longer than 14 days, a period longer than 14 days, in which you can file a motion for reconsideration? Shah Well, I do think that that really, Rule 59 comes into play here, which says 28 days. But I think it is very reasonable to interpret Rule 59 to apply here. But even if the Court concludes that it does not, it's at least a reasonable interpretation. And the Rule 59 argument, just to reiterate, depends on your Rule 54 interpretation, correct? Shah That's right, yes. So I do think that at the very least, if a local rule gives up to a 28-day period to seek reconsideration. And you could have the same confusion of a local rule that gives longer than 28 days, for example, a local rule here for motion for reconsideration, but then you're not within the 28 days of Rule 59, right? Shah I think that's true. I mean, the Court has not really had occasion to address the precise contours of when a motion for reconsideration is going to suspend the time to appeal. The Court's cases that have decided that have been in the context where the reconsideration motion was filed within the time to appeal, so it hasn't had occasion to consider it when it's been filed outside, say, this 14-day time period. So then I think clarification is important here to consider that. What do you do with a local rule that has no time limit, as the one here in a motion for reconsideration, the motion is filed a year later or something like that? Shah I think under those circumstances, then it becomes a question of reasonableness. Now, if the litigation goes on and a year later you're asking the Court to reconsider its decision based upon the exact same evidence that was before the Court a year earlier, I think as an initial matter, the Rule 23-F petition is very unlikely to be granted, because the court of appeals is going to see that as causing an unreasonable delay, and as was discussed earlier in this argument, the courts of appeals have absolute discretion whether to consider this appeal or not. Roberts You know, sometimes in the unique circumstances situation, if you're focusing on judicial conduct, what we find when we look into it, it's a lot more ambiguous than you may think. And I do think we have to be careful about what we're requiring of the district court judges. If somebody stands up in a situation like this and says, Your Honor, I'd like to file a motion to reconsider next week, is that okay? The judge says, sure, fine with me. I don't think he should have to stop and say, well, let me research it and see if the time has expired by then. And then if he says, well, if you're going to file it next week, file it on Friday, and it turns out Thursday is the deadline. I mean, the judge has misled you, the lawyer would say, because he said I could file it on Friday. It turns out the Rule says I couldn't. So I'm not as comfortable with an exception for cases where the court misleads the parties, because I'm not sure that's as clear a case as you might think of where the blame is justifiably placed on the judge. I'm not even sure I'm calling it blame. I think it's just the parties' reasonable expectations. When a court, when a district court has said that they're willing to reconsider another. But there's nothing misleading about that, I guess, is the point here, because the local rule had no time correct for a motion for reconsideration. The district court set a time for a motion for reconsideration. There's nothing misleading at all about that. Well, then, what's misleading, I guess, is in context, when you roll in Rule 23F, which the district court said nothing about, correct? The district court did not say that. I just don't think it's fair to say the district court misled here. I don't even think it falls into that box, necessarily. The leave to file a motion, the motion for leave to file an appeal, you didn't tell the judge you were intending to do that, did you? The Rule 23F was not brought up at the status conference. So how was the judge supposed to play lawyer? He's supposed to tell you, you ask him, let me file a motion for reconsideration. He's supposed to protect you and be your lawyer and tell you, you know, if you file it next week, you're going to lose your time to appeal? I don't know of any case we've ever held where a judge has to tell you something when you don't ask the judge about that. And it's really not our position that we're placing any kind of blame on the district judge. It is our position, though, that when a district court says that it's going to reconsider an order, that essentially renders the order nonfinal for purposes of appeal. And why would one file a petition for permission to appeal when the district court said we're going to take another look at this order and perhaps change it? It's simply just the way it is.  It's a nonfinal order. This motion granting or denying class action status is the most nonfinal, because the rules tell us it can be changed any time up to the end of your final judgment. And let me clarify. When I say nonfinal, I mean it renders it not the district court's last word on decertification based upon the evidence in front of the district court. The district court is going to reconsider this order, and it's our position that under those circumstances, it doesn't make sense to seek appellate review when the order might be changing based upon dependency of that reconsideration motion. Kagan. Kagan. I suppose I'm with you that it makes more sense to do the motion for reconsideration before the appeal, and that that is true even when the appeal is interlocutory. But, you know, not every rule we have makes perfect sense, and it just doesn't seem as though you're off the hook from actually looking up the rules and saying, well, look, this says 14 days. I'd better file this appeal within 14 days, or at least ask some further questions about it, just because it sort of seems to make sense to do a motion for reconsideration before an appeal. Well, the rules actually do not specifically address reconsideration motions. And it has long been understood that a timely reconsideration motion will suspend the time to appeal. Now, I think it would be a different situation if, for instance, we were in a bankruptcy appeal which specifically says that the time to appeal stops running only if you file within 14 days under the bankruptcy rules. There it was clear. I mean, here you have rules that are silent with respect to reconsideration motions. So I think we go by the Healy-Deedy-Rebar line of cases which say that a timely reconsideration motion suspends the time to appeal. And here the reconsideration motion was indeed timely, and for that reason, the time to appeal should be suspended and therefore runs from June 24th of 2015. The Rule 23-F petition was filed 14 days later, and the appeal, therefore, was properly deemed timely. Sotomayor, if we reject that, do you lose? If we reject that? That you didn't file a motion within the time, within the 14 days? May I answer the question? Sure. No, because we still have equitable tolling and the Harris-Truck-Lines-Thompson line of cases, so in either circumstance, the judgment should be affirmed. Thank you. Thank you, counsel. Mr. Huston, you have a minute left. Your Honor, in this remaining minute, let me emphasize and direct the Court's attention to PA 69-77, where the short status conference took place. And in that status conference, it is notable that not only did the Court not mention Rule 23-F, not mention any sort of appellate right, but counsel did not even mention Rule 23-F, nor even say the word appeal. And in fact, no mistake at all was made by the judge in that case. To have the rule that Lambert is urging today would have a judge effectively need to conduct a Rule 11 criminal colloquy with counsel, asking if they're aware of all sorts of potential related rights. That is asking an impossible task for a district court judge and an unfair one, and goes well beyond the acknowledged, sharply honed exception, which does not apply factually in this case. Thank you. Thank you, counsel. The case is submitted.